IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>BRYCE ALEXANDER VITTETOE, )<br>)<br>Defendant. ) | No. 2:20-CR-04075-BCW |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Bryce Alexander Vittetoe's Motion to Suppress Evidence. (Doc. 25). The Government has filed its response in opposition. (Doc. 27). No reply brief was filed and the time to do so has expired. The Court held a hearing on this matter on August 26, 2021. (Doc. 34). With leave of Court, the Defendant subsequently filed supplemental briefing. (Doc. 35). The issue is now ripe for consideration. For the reasons that follow, it is recommended that the motion be DENIED.

## I. Findings of Fact

On the basis of the evidence presented at the evidentiary hearing, the Court submits the following proposed findings of fact.

### Search of the Toyota Scion

1. Sergeant Aaron Hazelton has twenty-one years of law enforcement experience. (Tr. 19:14-17). He has served the last four years with the Cole County Sheriff's Office and is assigned to the MUSTANG Drug Task Force. (Tr. 4:2-14, 19:8-11).

2. Prior to August 25, 2020 incident, Sergeant Hazelton received information that Mr. Vittetoe was engaged in criminal misconduct. (Tr.19:18-24).

3. On August 25, 2020, Sergeant Hazelton was conducting surveillance of Mr. Vittetoe at a storage unit at 2900 Renns Lake Road in Jefferson City, Missouri. (Tr. 4:15-24, 23:9-12). Sergeant Hazelton observed Mr. Vittetoe in a White Toyota Scion that Sergeant Hazelton believed was stolen. (Tr. 6:3-5, 11:5-17).

4. Sergeant Hazelton checked the registration of the vehicle with the Jefferson City Police Department Dispatch Center, which advised him that the vehicle was reported stolen on July 25, 2020. (Tr. 7:17-23, Tr. 10:13-21, Gov't Exhibit No. 1).

5. Sergeant Hazelton was personally familiar with Mr. Vittetoe from past narcotics investigations. (Tr. 4:25-5:21). Accordingly, Sergeant Hazelton called for backup. (Tr. 5:24-6:5, 11:21-12:5).

6. Corporal Kyle Petty of the Cole County Sherriff's Office next arrived on the scene. (Tr. 23:5-24:5). Corporal Petty has served in the patrol division of the Cole County Sherriff's Office for almost nine years. (Tr. 22:11-20).

7. Corporal Petty observed Mr. Vittetoe exit the storage unit. (Tr. 24:2-21).

8. Corporal Petty, also personally aware of Mr. Vittetoe's past criminal history, including of resisting arrest and assault, knowing the Toyota Scion was reported stolen, and after observing a large knife on Mr. Vittetoe's hip, drew his weapon and commanded Mr. Vittetoe to get on the ground. (Tr. 23:14-20, 24:1-25:9). Corporal Petty then placed Mr. Vittetoe under arrest and took him to his patrol car. (Tr. 25:18-23).

9. Two troopers with the Missouri State Highway Patrol arrived at the scene and conducted a protective sweep to ensure that no other individuals were in the storage unit or vehicle. (Tr. 25:21-26:8). They located Casey Temmen sitting in the passenger

seat of the Toyota Scion. (Tr. 25:23-26:1). Ms. Temmen was taken into custody. (Tr. 26:9-15).

10. Corporal Petty then verified with dispatch that the Toyota Scion was reported stolen. (Tr. 26:16-27:2).

11. Once Corporal Petty arrested Mr. Vittetoe, Corporal Petty read Mr. Vittetoe his *Miranda* rights. (Tr. 27:7-11).

12. Mr. Vittetoe asked Corporal Petty what he had done wrong, and Corporal Petty responded that the Toyota Scion had been reported stolen. (Tr. 27:3-6).

13. Mr. Vittetoe stated that he had a bill of sale for the Toyota Scion and that it was not stolen. (Tr. 27:7-11). However, Mr. Vittetoe did not have any documents with him indicating he owned the vehicle or had permission to drive it. (Tr. 27:12-15).

14. Corporal Petty attempted to further investigate whether the Toyota Scion was stolen but was unable to contact the registered owner of the vehicle. (Tr. 27:16-24).

15. Corporal Petty subsequently uncuffed Mr. Vittetoe and told Mr. Vittetoe that he could leave, pending further investigation into the status of the Toyota Scion. (Tr. 28:3-16, 30:17-20).

16. Corporal Petty then began to search the Toyota Scion. (Tr. 29:1-7, 30:17-24).

17. Mr. Vittetoe remained at the scene on his own free will. (Tr. 30:17-22).

18. Corporal Petty searched the vehicle and discovered the barrel of a rifle protruding from underneath a blanket in the backseat of the vehicle. (Tr. 30:22-31:1). He immediately ordered the officers to again arrest Mr. Vittetoe. (Tr. 31:15-18).

19. A further search of the vehicle revealed numerous firearms including a shotgun, two rifles, a muzzle loader, and a pistol. (Tr. 31:7-14, 32:10-17). Numerous rounds of ammunition were discovered with the guns in the vehicle. (*Id.*).

20. Officers also discovered a large amount of methamphetamine, marijuana edibles, prescription medication, and a debit card that belonged to Abigail Heiland, the registered owner of the vehicle. (Tr. 32:10-17, 33:14-20).

21. A search warrant was later executed on Mr. Vittetoe's storage unit. (Tr. 51:7-12).

## II. Discussion

On September 23, 2020, Mr. Vittetoe was indicted by a federal grand jury on charges of Felon in Possession of a Firearm and Possession with Intent to Distribute Methamphetamine. (Doc. 9). Mr. Vittetoe filed his Motion to Suppress Evidence on July 23, 2021, challenging the constitutionality of the search of the Toyota Scion and his storage unit. (Doc. 25).

### A. Legal standard

Generally, a search of personal property, such as a car, requires a warrant, pursuant to the Fourth Amendment. *United States v. McGhee*, 944 F.3d 740, 742 (8th Cir. 2019). However, the Supreme Court has long recognized the automobile exception to the warrant requirement, which allows police to search an automobile if police have "probable cause to believe that an automobile contains contraband or evidence of criminal activity." *United States v. Shakelford*, 830 F.3d 751, 753 (8th Cir. 2016) (citing *Arizona v. Gant*, 566 U.S. 332, 347 (2009)). "Probable cause sufficient to justify a search exits where, in the totality of circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)). In making the probable cause determination, courts are to "apply a common sense

approach and consider all relevant circumstances." *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141). Moreover, "[p]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) (quoting *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993)). The Eighth Circuit has further held that when police have probable cause to believe a car is stolen, they may conduct a full warrantless search of the car. *United States v. Brown*, 535 F.2d 424, 428 (8th Cir. 1976).

When officers cannot rely on the automobile exception and instead seek a search warrant, probable cause must exist, which can be established by setting "forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Whether probable cause to issue a search warrant exists is determined by the warrant-issuing judge after a consideration of the totality of the circumstances. *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (citing *Gates*, 462 U.S. at 236). The resolution by the issuing judge, "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Review is "limited to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 236 (1983)). Only the information contained "within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted).

If police or the court fail to abide by those standards when issuing or executing a search warrant, the exclusionary rule, which is a judicially prescribed remedial measure, will prohibit "the use of improperly obtained evidence at trial." *Martinez Carcamo v. Holder*, 713 F.3d 916, 922 (8th Cir. 2013) (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)). The exclusionary rule also governs "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

### B. Probable cause existed when Corporal Petty searched the Toyota Scion.

Mr. Vittetoe maintains that officers did not have probable cause when they searched the Toyota Scion, which constituted a violation of his constitutional rights. (Doc. 25 at 4-5). The Court recommends a finding that the search of the Toyota Scion was, in fact, supported by probable cause because officers had information indicating that the vehicle was stolen, amongst other factors. *See* Brown, 535 F.2d at 428 (holding that probable cause to search a vehicle existed when police believed the vehicle was stolen).

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place," based on a totality of the circumstances. *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141). Here, Sergeant Hazelton previously learned that Mr. Vittetoe was engaged in criminal activity. Moreover, Sergeant Hazelton confirmed that the Toyota Scion was stolen. Sergeant Hazelton also knew Mr. Vittetoe's history of past arrests. Sergeant Hazelton then relayed all this information to Corporal Petty. Corporal Petty was also personally familiar with Mr. Vittetoe. Based on a totality of these circumstances and considering that probable cause can be based off the collective knowledge of law enforcement, a fair probability existed that contraband or evidence of a crime would be found in the Toyota Scion.

*Wells*, 347 F.3d at 287. Therefore, Corporal Petty properly searched the Toyota Scion pursuant to the automobile exception of the warrant requirement.

Corporal Petty's willingness to release Mr. Vittetoe from custody based on Mr. Vittetoe's statement that the Toyota Scion was not stolen does not negate the existing probable cause. Probable cause only requires a "fair probability that contraband or evidence of a crime" will be located during the search. *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141). There was a fair probability that contraband or evidence of a crime would be found in the Toyota Scion, even after Corporal Petty released Mr. Vittetoe. Specifically, Corporal Petty knew Mr. Vittetoe's history of past arrests, that the Toyota Scion was reported stolen, and that Mr. Vittetoe did not have paperwork indicating he was the lawful owner of the vehicle. Applying the "common sense" approach, probable cause to search the Toyota Scion continued to exist based on this knowledge, even after Corporal Petty released Mr. Vittetoe. *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141). Given that probable cause existed, the officers properly conducted a warrantless search of the vehicle pursuant to the automobile exception. *Brown*, 535 F.2d at 428. Therefore, this Court recommends denying the Motion to Suppress as to Mr. Vittetoe's first argument.

**C. The evidence obtained from the storage unit does not constitute fruit of the poisonous tree.**

Mr. Vittetoe maintains that the search warrant executed on his storage unit was "fruit of the illegally obtained information learned from" the warrantless search of the Toyota Scion. (Doc. 25 at 5). This Court recommends denying the Motion to Suppress as to Mr. Vittetoe's second argument because the evidence obtained from the storage unit does not constitute fruit of the poisonous tree.

The fruit of the poisonous tree doctrine does not apply because there was probable cause to conduct a warrantless search of the Toyota Scion. Officers legally obtained the evidence from the Toyota Scion pursuant to the automobile exception. Therefore, the evidence discovered in the storage unit was not "derivative of an illegality or 'fruit of the poisonous tree.'" *Tuton*, 893 F.3d at 568 (quoting *Segura*, 468 U.S. at 804). Accordingly, this Court recommends a finding that probable cause supported the search warrant executed on the storage unit and that the evidence recovered from it should not be suppressed.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING Defendant Bryce Alexander Vittetoe's Motion to Suppress Evidence.

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation that are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 1st day of September 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge